Case number 22-1730, Isaac Harris et al. v. Medical Transportation Management, Inc., Appellant, v. Star Transportation LLC, et al. Mr. Andre for the appellant, Mr. Kirkpatrick for the appellate. Good morning, everybody. Good morning. Good morning, John Claude Andre on behalf of the defendant appellant's medical transportation management. It's incumbent upon me to begin here by stressing truly how extraordinary the district court's order in this case was with respect to both Rule 23 and the FLSA. It is undisputed, this is in the district court's own words, that the putative class members here were employed by 80 different transportation service providers, each of whom negotiated an individualized rate structure with MTM. Some were paid salaries, some paid hourly with overtime, others paid hourly without overtime, how much they were paid, whether they were paid for breaks, that many were employed by several different transportation service providers at different points in time, that even individuals working for a single transportation service provider were paid at different rates at different times. Indeed, so how would you recommend the court interpret C-4? Yes, Judge Rogers, we would recommend primarily that the court interpret C-4 as not permitting a quote-unquote issues class, and we have a number of reasons why we think that's appropriate. In particular, if you look at the text of Rule 23. Can I back up and just briefly, I don't want to, I'm sorry, I am sorry to interrupt, but just to follow up on a question, what, I understand your arguments, we have lots on that, on why you don't like the approach the district court took. What do, I think this is what Judge Rogers was asking, but she'll tell me if I'm incorrect, what do you think C-4 does affirmatively? I think C-4 is a severance provision. That is precisely what I was asking, and I thought you were starting to answer. Sure. C-4 is what I would call kind of a severance provision or a pruning provision. And in fact, if you go back to the 1966 advisory committee notes, when C-4 was first promulgated, that's exactly what the advisory committee said. The advisory committee said that C-4 is designed for the case where damages are too complex and too individualized, but they should not defeat class certification. So once you have a damages class under Rule 23CB3, you're not going to permit that class to, or prohibit that class from being certified because damages are messy. C-4 allows the district court to sever off or prune off the damages and leave that for the end of the day. Of course, that's been reinforced time and time again since then, most recently in Tyson Foods, in Amgen, and in Comcast. So C-4 does have work to do here. It's not, as both plaintiffs and their amici say, rendered a nullity by our position. To the contrary, I think their position renders B3 a nullity because, as this case illustrates, a district court can go all the way down the road to the earliest possible common question it can find, even though there's no predominance whatsoever with respect to the entire action, let alone any particular cause of action. The district court can go all the way down to this very preliminary question and say, oh, well, that's a common question. And it predominates as to itself. And so, therefore, I'm going to certify that issues class. So you agree that a court can, under C-4, separate, have a liability class, even if damages are going to have to be individually determined? Absolutely. I'd be applying to the Supreme Court if I said otherwise, Your Honor. Sure. But doesn't just the text of B-3 already do that? For common issues of law or fact? I don't believe so. Do you find where they predominate? So whether that legal question, that common question of liability may predominate over what you called the messiness of individualized damages. Isn't that already exactly what? No, I don't think so. I think B-3, as a matter of plain text, says, you know, you have to look at whether the issues of law and fact predominate. It doesn't separate out damages. It doesn't separate out things like in a fraud case, you know, reliance. Reliance as a matter of law is going to be individualized. It doesn't separate out affirmative defenses. Those are all things that if there wasn't C-4, that would preclude classification in those contexts. But of course, you know, we're not advocating, and the Supreme Court has said, that you can't take those entire categories of cases out of classification. But our reading is that it just allows for a little pruning. You know, not, you know, I don't want to mince too many words with Judge Posner. He said carve at the joints. I don't know what that means. I don't know what that means, honestly. When I'm struggling, I'll just, I'm sorry to interrupt you, but what I'm struggling with is B-3 itself already assumes you're going to be focusing on certifying common questions. Because there will be individualized issues, whether it's damages or something else, but the common question will predominate. So it allows you to go ahead and certify the class based on certain questions. And then your position is that C-4 tells the district court under B-3 or presumably under, I don't know if we can do it under B-1 or not, but we'll just focus on B-3 here. Allows them to carve other issues, you said, maybe like an affirmative defense or something like that. So how, what is the legal test for when there's been too much carving? I think that seems to be your position here. You don't quibble with the fact that courts can carve out issues. I have a couple of responses, and actually I can go back to responding to your antecedent question, which you mentioned at the beginning of your most recent question. I think the answer to why common questions of law or fact doesn't deal with the damages concern by itself and why you need C-4 to help it out is because B-3 talks about common questions of law or fact that predominate with respect to the controversy. The end of B-3 talks about the controversy. In my view, that's the cause of action at minimum, if not the entire case. To go to your point about whether there was just too much pruning here or too much carving, I mean, absolutely there was. And so I don't want to swim away from our primary argument too much, because we do believe our textual reading is correct. But what I was trying to get at the outset here is that what the district court did, and if this court were affirmed, presumably in a published opinion because it's an issue of first impression for this court, it would be the most muscular application of C-4 that any appellate court has ever adopted. All of the other cases that plaintiffs rely on as framing supposedly the other side of the split that we're on the short end of here, all the other cases involve some common event that allegedly caused injury or some common practice or policy that allegedly caused injury. And then the question in that proceeding was, did the defendant do it? And is the defendant legally responsible for that? That's not what we have here. We have this very early preliminary question. And I was trying to think about what other kinds of legal questions do courts deal with where they can invite an early summary judgment motion under Rule 56, because summary judgment can be brought at any time. It's like preemption. It's not so much like personal jurisdiction, not so much like venue, not so much like form of non-community. Those are all early issues too. But with preemption, oftentimes that cannot be resolved under 12b-6. It has to be resolved under Rule 56, but the court deals with it early that way. That's what I think the district court should have done here instead of doing what it did, which is carve out this little issue that doesn't resolve any question of liability as to any cause of action, let alone the entire case. Sir, but then that sounds like, again, all you're agreeing with is C-4 lets you to separate liability, and you would say total liability, not this sort of threshold liability question that district court identified here. So you're saying the total question of liability and damages can be separated. But I thought you added, and correct me if I misunderstood, that something like affirmative defenses could also be severed. So what I'm struggling with is how would you write the legal test for an opinion that would say the liability damages severance, that's okay. Affirmative defenses, that's okay. This is not because. Right, I would say, I know I'm going over my head. Don't worry about that. I'm sorry, I'm taking so much time, just struggling. Where there is a recognized issue that is recognized as being necessarily individualized, so again, like I said, reliance, affirmative defenses, damages, that that is what C-4 is intended to do, and that is what C-4 may be applied to. There is no such thing as a writ large issue class that allows, and sticking with the carving at the joints, pruning analogy, so plaintiff's amici actually is a term that I like, that you can't julienne in this regime. And I think that's what a district court here was trying to do. And so I think the opinion that the court would write would say where there's a recognized individualized issue that otherwise would defeat predominance, C-4 enables the court to sever that off so that a class action may be certified. But that's not an issue class, because in this case, what the district court did was fuck out this one very preliminary issue, leaving all these other questions down. What about just judicial economy generally? Pardon me? Judicial economy. I don't think there's any judicial economy here. Either way, there's going to be, we don't know. Frankly, the district court didn't articulate exactly what plan it has for down the road. But is it going to be in small groups of trials? Is it going to be every one of the 800 class members coming in for a mini trial or hearing on whether there actually is liability? And then what the amount of damages reliability is for each one of those people. And so we're in the same place. The district court was I thought it was more clear than that. What the district court said is, look, on the question of questions of joint employer and contractor, your client, MTM, doesn't dispute that that's one answer. That doesn't need to be individualized. There won't be an individualized answer for that, that you would be a joint employer for some and general contractor for others and neither for some others. That will be one answer to both of those questions. Either you are or you aren't. And then that will be answered. And then all the individual actions that need to go forward will go forward. Put aside the FLSA thing over there, too. But those will go forward as they need to. But at least this common cross-cutting question that could release MTM conclusively from any liability across the board in this action, that's what will go forward. Why is that a Julianne rather than a permissible cut? Sure. I think the problem is that we also have the superiority requirement here. And that requires that what the district court order be superior, not maybe be superior, but actually be superior to proceeding with individual actions. And so the prospect that my client may get out of litigation because they are found as a matter of law to not be a general contractor or a joint employer isn't definitively a finding that this method is superior. And even with respect to the issue of whether we're a joint employer or general contractor, it's, frankly, it's messier than that. We don't think it's susceptible to the common proof, even that preliminary question. But the district court found otherwise on that. It would be subject to common proof. So that's kind of like we really hasn't been briefed for us to overrule that determination. Yeah, I'm willing to acknowledge that the district court did say in his original order denying class cert under B-3, he did have a paragraph that said that at least with respect to joint employer or general contractor, common questions predominate. So he didn't quite go as far as saying that absolutely it's resolvable by a common proof. But he didn't say that at least, you know, predominance is satisfied with respect to that. So we will take that as a given. But my point is. I thought that was superiority, but go ahead. Well, it was. It's just more it's more complicated. It's more messy. This is I'm sorry. I'm just I'm really trying to understand this because it seems very important. And so really what I'm trying to understand is, OK, if it's fine to separate liability and damages, it's fine to separate liability and an affirmative defense. Yes. Why isn't it? How do I know what it's a Julianne rather than a legitimate cut? In your words, that is. Why isn't it fine to separate the threshold? Should MTM walk away from this? Is there any basis, this threshold basis for liability? Are you connected to this problem that they're alleging against a lot of other companies at all? Yes. No. Why is that not a permissible decision? And then the rest of just like life, it's kind of like a liability, although it's a stage one liability. And then we let the rest of it go as opposed to liability damages being cut. Because what the court has carved out is not a recognized. An exception to something that is acceptable to common proof. Right. So again, it's not like an affirmative defense. It's not like damages. It's not like reliance on the fraud. So it's not recognized. And then on top of that, even if it's resolved in plaintiff's favor, there are still all these additional proceedings that need to occur that go to liability. And so this is what the district court julienned out here is just the first sliver of potential liability for my client. And that is just too far away from. And that wouldn't happen under your theory where reliance could be. A reliance class could be certified. No, because it will want to be because it's recognized as an operation of law that reliance has to be individualized. And so what that class would look like is that you act, you certify all the all the issues. And I'm getting that all the questions, all the questions up to reliance. And it may be that the defendant is let off the hook at that point because, you know, whether we're in a summary judgment or in a joint trial determines that there was no misstatement or there was no duty, no misstatement, all the things that go to fraud. And then you have the reliance and damages trial. So it sounds they just divide. So you don't. So you don't insist that liability versus damages, that's the only line. And you recognize, I guess, with this reliance thing that even within a claim, a fraud claim. Part of that fraud claim itself can be divided up so that all the elements except reliance can go as a class and then reliance. So it's OK to divide up even pieces of a single claim under using C4, the C4 muscle that it gave to B3. And so why is this the whole reason this division isn't OK is because. There are still more than there's more than one thing to be decided after this is resolved under the course of action. I'm struggling again with the legal test. It's too far away from actually establishing liability because it doesn't. It doesn't go it doesn't go to the question of whether there actually was an FLSA violation. It basically just asks whether my client would be vicariously liable for some FLSA violation by one of the 80 odd TSPs that employed 800 different drivers. And so in all of that, it's going to be, you know, I guess, but too far away isn't really something we can write into. Of course, I guess at this point into an opinion, so. Is it whether the weight of the claim qualifies for class action, but just one issue doesn't? Or what if there were sort of two to three issues that did meet all the 23 B3 requirements, but two did not? Would that be an OK use of C4? I think it depends on what the issues are, but probably it's hard to have a rule that depends on what the issues are in every claim. And again, this is our primary primary argument that we're probing here on, you know, how to interpret C4. Go back to what I started with, which is our backup argument. I think at minimum, this court can look at all the cases the plaintiffs rely on. And what you can see is that this is too far. This is insufficiently proximate to the liability termination. Well, it's sort of hard to write opinions on the no one has ever done this because there was a time when no one had ever divided liability and damages. And the court did that for the first time. And everyone agrees that's fine. And someone for the first time said, well, I'm actually going to divvy up this claim here and peel off reliance. And that was fine. So the fact that they're doing something in a form that hasn't been done before. It's not a legal test. That's what I was trying to give you. Is it a is it a weight of the action? Is it the three versus two? Is it you can only do peel off one thing? I just I understand. I think I really am trying to grapple. I think I understand some of what your concern is here. And there aren't a lot of examples that I could find that look like this type of divvying. But I'm really struggling with how one writes it. You want sort of a clear legal rule against this as opposed to, you know, analyzing district courts discretion to sort of manage really big, funky litigation that's come into their courtroom. You know, I understand. And again, I think the the opinion that would give clear guidance would be one that said that where there is a recognized issue that otherwise would defeat predominance as to positive cause of action or an action as a whole. That a court may use C4 to sever off that predominance destroying issue so as to proceed with a class provided that all the other prerequisites are applied or satisfied. And that would be how we urge the court to interpret C4. Again, the practicalities of it, to go back to your question, but, you know, what if it's seven to two? We actually do have that fact pattern. We think that the Martin case from the Sixth Circuit is wrong because it articulates a very loose standard for what C4 can be used for. But at least in that case, the court certified seven questions and then left three at the tail end. And we think that's wrong because the way it divided things up on our first argument, our primary textual argument, but it shows how here the district court sever off one very early issue and leave the rest for the end. Again, it's too far insufficiently approximate. I know I'm not offering you the best terminology to put in your opinion, but all the plaintiff's cases are like whether it's Russell from the Third Circuit, which, again, we don't love. All these cases have examples. I'm not asking you to love things. I'm asking you, how do they violate your test? How do you think the Sixth Circuit, we're not bound by the Sixth Circuit, the other ones, how do they violate the test? Because there, at least, the great weight of the claim was left in class status. And just a couple, like your reliance example, a couple issues were carved off. So in the Sixth Circuit example, it would violate my test because there the court left a fact of injury, proximate cause, and damages, all for individualized determination. Under first principle and under our reading, a fact of injury and the proximate cause inquiries, the court severed them off for a reason because they were predominance destroying as to the overall causes of action. But you're fine with predominance destroying issues being cut off? Damages against settled ones, recognized ones. Again, settled and recognized doesn't work because courts have to, some courts have to do it for the first time before it's settled or recognized. We can't sort of live in a world where we can only repeat what someone else has already done. No, I understand. Ultimately, if the issue is one that is individualized, then the presumption should be that it is predominance destroying and the class cannot be certified. From the defense side, in many instances when you have these class actions and there's a challenge to whether or not you should certify the class, there's always this argument about the individualized damages after you find liability. But they believe that the class should be destroyed because you would have to engage in those individualized damages. Oftentimes, a trial judge will say, no, let's go forward. We've got the commonality. We've got predominance and superiority. And the class should go forward. But you can take care of the individualized damages another way. For example, having a special master deal with those particular issues along the way. So why wouldn't this be different kind of using the, I mean the same thing, kind of using that analogy for how a defense side would try to not have a class go forward? Because again, this is a preliminary question that only and potentially only resolve the liability question in one direction. Admittedly, in our direction. But to Judge Millett's questioning, when you put forward issues, you're hoping to kind of shave off those who should not belong. Like get some initial liability determinations by making definitional constructions and things of that nature in the litigation so that you know what you're going to be trying eventually. Right. I think we do know what we'll be trying here eventually. We just don't know what it's going to look like. But there's... Well, I guess I should say it better. Who and what will still be part of the lawsuit? After any preliminary determination in this particular case? Yes. So you will have 800 drivers from 80 different TSPs. What will remain is whether there actually was an FLSA violation. Because some drivers, they had a set schedule. Some drivers had a split schedule. Some drivers were on call. And all those variables will impact whether there actually was an overtime wage and hour violation. And then what is the quantity or the damage associated with that? Again, we're fine if the court had just said, well, we're not fine with any certification on the front end of this equation. But if this case had been amenable to classification and the court just severed off the last damages calculation, that would be fine. Because courts do do that, as you know, in just trials all the time in Comcast, Amgen, Tyson, say that courts can do this. And again, going back to the 1966 advisory committee notes, that was the intent of C-4 when it was originally promulgated. Can I follow up on your question? So if this goes forward, I get there's going to be a lot of fighting between the direct hire companies and these employees. What questions are left to be decided? Let's just assume, and I'm sure you'll have lots of arguments against this, but let's just assume you're found to be a joint employer and or contractor for these purposes so that you at least have potential liability. How many questions are left to connect you to, say, one of these direct hire companies, one of the, I don't even know what to call them, the driving companies? The GSPs. All right, so the service providers. How many issues are left between you that would make you responsible or not? Say the service, again, I'm assuming all kinds of things here, service providers screwed up somehow. How many issues are left just as to your liability? My apologies, I have to fight the question a little bit because the TSPs were not sued by the plaintiffs. We brought them in as third party defendants, but they're effectively stagnant. And so if the district court were to find either on summary judgment or through a joint trial that we are a joint employer or general contractor, then we are vicariously liable for whatever violations are found to have been committed by the various TSPs. And so the TSPs are basically witnesses that we will be using to try to fend off any liability to establish that they're. But you're automatically vicarious liable, vicariously, excuse me. It's too early in the morning. So vicariously liable. There's really not, there won't be any more questions about what you did or didn't do. It's all going to be about what these, what you call TSPs, did or did not. Correct. There's no way. OK, because you're strictly liable for anything. Correct. So really this just resolves directly sort of your status. And then all the fighting is to be whether anything went wrong or not. Right. And the extent to which it did, if something did go wrong, which then gets really messy. And that's why, you know, further on, I analogize this to preemption, where, you know, I've had cases where, you know, I'm not going to grant your motion to dismiss here, but go ahead and do it on summary judgment. Because it's that threshold question that the court can resolve. And if it goes in the defense's favor, the case is over. If it doesn't, then you proceed with the case in the normal course. What do you think? Go ahead, Judge Childs. I was just going to ask, what do you perceive C-4 to be allowed for? I mean, what are some examples that you say this rule can be used for? For C-4? Mm-hmm. So absolutely damages. Again, that's the 1966. Anything other than damages? Yes, no. Affirmative defenses. OK. In the fraud context, reliance. I'm trying to think. I haven't thought of every example. And if those are three, there's one. Sorry, and you're saying it's very open-ended. I'm sorry. No, I'd have to disagree with that. It's not open-ended. When I say open-ended, meaning that it's broad language. When appropriate, that's discretionary right there. Yes. An action may be brought or maintained as a class action with respect to particular issues. That's what I mean by open-ended. It's a broad term. Right. But under our reading, because you have to satisfy predominance with respect to at least an entire cause of action, then C-4 can't swallow B-3, can't swallow the predominance requirement. And, like I said, that's also where our fight is. And to be clear, claims to MICI say that we are advocating for an entire action rule for predominance. We are not. Five times in our open brief, we said that the predominance inquiry needs to be conducted first, and it needs to be satisfied with respect to at least a cause of action, not the entire action. If you have multiple claims, like you do here, and then C-4 can be used to do that pruning. I know that. Judge Rogers, did you have a question? Yes, I did. Following up on Judge Child's points in her questions, and given our standard of view in light of district court discretion, is your position inimicable to a remand on the issues basically you raised, but also were this court to find that the reasons given by the district court do not withstand scrutiny? In other words, a lot of your answers, both to Judge Millett and Judge Childs, it seems to me, were arguing that the district court misunderstood the issue he was pruning out as being simple. Are you this or are you that? And if you're not, the case is over. What I hear you saying in some of your answers is there's a lot more to be done. And so judicial economy here is fanciful. And if that's the main reason the district court did what it did, then we would send it back for the district court to reconsider. Not necessarily by defining a rule of our own, but simply indicating that the district court has to give this another look in light of some of the limitations that the questions have identified through your answers. I think I hear you asking Judge Rogers if we are amenable to a remand in the event that we don't get a full on reversal. I'm not trying to put words in your mouth. I don't know why people have so much trouble with my questions. All right. But I am asking that. The alternative here to our adopting a rule would be to send it back to the district court, leaving open the possibility that it could identify rationales for proceeding as it has suggested, but the rationales that it has offered are inadequate. Yes, I understand, Judge Rogers. And so our primary position is that, you know, Castano, the Fifth Circuit case articulated articulated the rule probably better than I did today. So if you want to look to that, that's where I point to. But as to your question, Judge Rogers, you know, I know you were on our Rule 23 F panel and what we told you in a 28 J letter then was that, you know, if this court were to, I don't want to say adopt, follow the guidance of the Third Circuit's Russell case, which has a nine factor squishy test from the ALI, the District Court's broad discretion. And we pointed out that even under that test, we would win this appeal because this court would have to vacate Judge Meadows' order. And I stand by what I wrote in that letter. So absolutely, if this court is unwilling to chart a hard path on what C-4 means and disavow the notion of a issues class, then at minimum, vacater and remand would be appropriate. And I know I'm way over my time, and I haven't even touched the FLSA issue here. And so the court's indulgence, I'd like to quickly pivot to it. I'm being rude again. I apologize. So you said you like the articulation from the Fifth Circuit, but I don't know how one gets out of that articulation that you sever out things like affirmative offenses, reliance. That seems to me a much more wooden rule than what I'm hearing you articulate today, which seems to be sort of more nuanced, just be nuanced and still have important substance. But that one seems to me a bit of a meat cleaver to build on Judge Posner's language, as opposed to anything surgical. So the Fifth Circuit actually was the reliance example I was giving you, where what the Fifth Circuit said you could do, which is a fraud claim involving tobacco. The Fifth Circuit said there the reliance issues predominated over the other issues in the case. And then it said you can't carve out the reliance issues in Certifier 23-C-4 based on the complexion of the case in total. I think that this court could adopt what the Fifth Circuit did there and be consistent with what I've been saying this morning. The recognized is really hard. I'm sorry about that. That makes it easy. We can say that's okay, but that doesn't tell district courts. It's really unfair to district courts because we don't say what other things are recognized until someone recognizes them and people say that's okay. Well, and someone will say, well, it hasn't happened before, so it's not recognized. But it could be perfectly sensible and fit fully within the rationales that you're advancing. I understand. All right. We'll give you a couple of minutes on the FLSA issue. Yes, thank you. So what I was saying at the outset about the district court's order being unlike anything the circuit court has upheld before is even more true with respect to the FLSA. So with respect to 23-C-4, the district court at least purported to have the cover of the majority of circuits that have interpreted C-4. With the FLSA, the district court adopted the minority view and, in fact, went even further. One common thread that runs through all of the cases on both sides of the divide and regardless of test applied by the various circuit courts that have interpreted what similarly situated means, the common thread there is that in each one of those cases there are allegations of a common FLSA-violating practice or policy. We don't have that. And that's undisputed. The plaintiffs originally alleged that in their complaint. There was discovery, and the discovery proved that to be false, and Judge Mehta himself found that those allegations didn't withstand scrutiny. And that is what led to him to reject a B-3 damages class for lack of predominance. So to go ahead and fail to decertify, right, because the FLSA is different and there's conditional certification, to fail to decertify an FLSA collective where there is no common FLSA-violating policy or practice can do so on the basis of, again, this one similarity, not a host of similarities. It's just contrary to whatever other court of appeals in this country has counted against. Can I just ask you a procedural question? Sure. The district court denied certification under 1292B for this issue. Right. In deciding whether to exercise pendant jurisdiction, would we first need to ask whether we thought the district court abused its discretion in denying certification under 1292B? Is that part of what we think about in doing this? Or do we just say, thanks for playing district court, Judge. We're plowing straight ahead on our own. I would say the latter, Your Honor. And even though Gilda Marx recognizes… Then what's the point? I think it's to give the district court the chance of saving this court. To say yes, but if it says no, we'll all ignore it? I think it's to give the district court the chance in the first instance to save this court from doing the work. I mean, that's, you know, what you've articulated, whether a party has… That's not usually how it works, actually. That's why those things are generally reviewed under discretionary standards, is that we actually put the first… It's not that we're like, we're too busy, you go do it. They're pretty busy in the district court, too. Absolutely. It's that they're the closest to the litigation and they have the best vantage point. And they're smart and learned and can bring their best judgment to bear. And we don't lightly, in other circumstances, brush that off. So I'm just a little surprised that we would just pay no heed to it in this context. Well, I mean, it is one of the Gilda Marx, the eight Gilda Marx factors, whether a party has attempted to circumvent 1292B. No, you haven't done that. Right, right, right. We didn't do that. You're trying to circumvent the result of your 1292B application. Correct, correct, correct. No, I mean, I guess if the district court in denying 1292B had said certain things that were relevant to the Gilda Marx factors, I mean, you know, it'd be hard for me to tell this court to just ignore them. But as far as the legal tests for pen and appellate jurisdiction vis-a-vis a 1292B certification, they are different tests. This court has plenary jurisdiction as guided by Swinton Gilda Marx to decide whether to exercise pen and appellate jurisdiction. And as we laid out in our brief, you know, at least five, if not six of the Gilda Marx factors favor us here. And when you add to that the kind of the uniqueness of this case, where unlike the Second Circuit case, I forget, perhaps it was the plaintiff's side of two out-of-circuit cases where there was a Rule 23 ruling and an FLSA ruling, and those circuits denied pen and appellate jurisdiction, declined to exercise it. What sets this case apart and makes it unique, and I think makes pen and appellate jurisdiction to reach the FLSA issue easy, is that Judge Mehta expressly tied them together. And so it would be... Well, not on the merits. But should they have been interwoven? Go ahead. But should they have been interwoven like that? Should they have been? I do think they rise or fall together as a practical matter, but the standards are different. And he didn't engage in a separate analysis as to both or explain how even though they're different, you know, I'm getting to the same place. He literally said the question and the answer, it's the same for both. And so given that he did that... Which adds to the economy of litigation. That's what he said it to. It's certainly not the same legal answer or even the same legal analysis. That's why you spent the same number of pages on that merits issue as you did on the merits issue under 23-F. If it were the same analysis, it would have been what we said on the previous pages. No, that's right. But, I mean, well, because the tests are different. Rule 23 is a little bit more demanding. But at least in this case, when we believe that he erred and committed the same error that he did with C-4, and he expressly tied his two analyses together without specifically accounting for whatever differences there may be. I think that that's kind of, you know, the extent to which this court needs a plus factor to push it over the edge in exercising pedical jurisdiction. That's a unique plus factor that's absent from other cases. We've kept you up a very long time. Thank you. Do my colleagues have, Judge Rogers or Judge Riles, have any more questions? Do you have any questions, Judge Rogers? No, Judge Millett. Okay. All right. Thank you very much for your time. We'll give you some time for rebuttal. Good morning. Good morning. May it please the court, I'm Michael Kirkpatrick. I represent the plaintiff's affiliates. Plaintiff's claims under D.C. law require that they establish that MTM is a joint employer or a general contractor. And those issues will be determined based on evidence that is common to the class, as opposed to individualized facts regarding MTM's relationships with specific plaintiffs. So the district court was correct to certify those issues of class treatment under 23C-4, and the decision below should be affirmed. Otherwise, those same issues will have to be litigated over and over again on behalf of potentially hundreds of individual plaintiffs. I don't think I quite understand that answer. Because this is one action here, in court here, and you said the evidence is common. And MTM doesn't think that it needs an individualized determination as to each service provider, whatever that acronym is, the service providers. It will be, you know, it's up or down. Either we're a joint employer across the board or we're not. Either we're a contractor across the board or we're not. And if it's common evidence, then help me understand what judicial economy has accomplished by not just having summary judgment or a district court could order, you know, partial summary judgment focused on just this issue in the very same action. What would have gone different in this case if the district court had said, look, first things first, let's do whatever discovery you need and briefing on these two questions, and we'll resolve that on summary judgment first, and then we'll get to everything else. Well, I think that the case would not have the class character. I think the court had to certify the action for class treatment with respect to these issues in order to have it have binding effect in both directions versus seriatim litigation. Well, they have already said up front and on the record that it's going to be one answer for everybody. And so they're on the record before the court, and the court could incorporate that into any decision. And I think that would be, you know, quite useful in preventing having to relitigate this issue all over the place. I assume you're talking about other actions, not this one elsewhere in the court system or just as to this one. I mean, what we have right now is the statute of limitations has been told for all of the class members and all the people in the collective. Once this issue is decided, then they will have to come into the action individually to prove up liability and damages. But if we don't treat it as a class action and we just decide this issue on behalf of the three main plaintiffs, well, then we we're going to need to tell everybody who's been relying on American pipe tolling to keep those claims alive. And they're entitled to sit back and wait and see what happens. We're going to need to tell them they need to come in and file an individual action. So that's the only judicial economy accomplished by this class action is the tolling of the statute of limitations. Well, it's we don't it doesn't sound like it's actual litigation economy. So it's it's just the tolling of the statute of limitations before people have to come in. That's a major part of it. I think there's still some other economies and efficiencies here. I hardly seems like that's what C4 is about. So tell me about the others. Well, the individual economies, I'm sorry, I wasn't clear. Yes. If this case if this issue has to be relitigated because it's only decided with respect to the main plaintiffs, if plaintiff prevail, then, yes, the others could probably rely on offensive non-mutual collateral estoppel and get the benefits of that. But if the three main plaintiffs lost on this issue, well, others could still come in who would have their statute of limitations told bring their own case and say, well, we want to try again. We're going to try to take different discovery. Well, that sounds like a good thing for those plaintiffs not to be bound. And it's MTM is the one that doesn't want the class. So they're going to be stuck with the consequences of not having one. I have to litigate this all over, all over town. Right. And overall fairness of the class resolution. I think it actually favors defendants because it binds both ways. I guess they get to be the expert on what favors them. But that is the main the main efficiency here is to decide a threshold issue without having the possibility of hundreds of people needing to come in individually before that issue is decided or waiting in the wings. Have you thought of other cases, perhaps in other jurisdictions in which you have a collective action, but it doesn't ultimately resolve liability? Like, in other words, the collective action has been certified, but it hadn't resolved liability. No, I am not aware of any such cases. But I do think that this case does fit in the Scott Campbell articulation of members of a collective or simply situated when resolution of a common issue will materially advance the resolution of the case. And I think there's an important practical thing to keep in mind, which is why I don't think we really need to get to the FLSA issue is everybody in the FLSA collective is in the class. And the class claims, which are under D.C. law, are better than the FLSA. They provide more robust relief and they provide an alternative pathway to joint liability, which is this general contractor rule, which is in D.C. law, but not under the FLSA. So could you get the tolling just by virtue of the FLSA collective action? Only no, no, only with respect to the hundred and fifty individuals. But those hundred and fifty individuals are in the class. And either way, if they need to come in after a decision in plaintiff's favor on joint employer and general contractor or come in because, you know, the name plaintiff's lost. If the certification is reversed, they're going to come in because that's where they get the more robust relief under the D.C. law and the two alternative pathways to holding MGM jointly and separately liable. So the fact that these hundred and fifty people opted into the FLSA collective, they certainly once given notice that they need to come in, they want to prove up liability and damages under the D.C. law. They're going to do that. Can you have a collective class be similarly situated, but then still lack commonality? Well, they don't lack commonality with respect to the question of whether MGM is a joint employer. And because that is a threshold question here, I think it makes a lot of sense to move forward and decide that question as part of the C-4. And this is sort of an unusual circumstance because, you know, when you think about it, there are a lot of meaningful issues that involve multiple questions of law or fact. And factual differences among class members might make those issues turn on individual questions that predominate over common ones. But here, MGM's practices were the same across all the subcontractors insofar as those practices are material to joint employer and general contractor. And that's not always going to be the case, even when joint employer is at issue. So this is in some ways an unusual situation that they treated everybody the same in terms of the way they dictated terms for hiring and training and performance of the drivers. It's the same with all of the transportation providers. You can easily imagine a situation where somebody who's at the top of the pyramid like MGM has very different relationships with transportation service providers. We don't have that. Which is why it could be resolved on summary judgment. Yes. Without there being a class. Well, I want to take up the text, and that gets to your question, because I think this is really important. Rule 23B states the conditions under which the class action may be maintained. And 23C4 provides that an action may be maintained as a class action with respect to particular issues. So if you read those two provisions together, the most sensible construction is that the 23B conditions on maintaining a class action need only be satisfied to the extent that the class is so maintained. That is, it's only the certified class action that has to satisfy Rule 23B, not any part of a case that isn't a class action. And that, I think, is really important, because earlier in the discussion, when my friend was up here about B3 and having individualized issues of damages, those cases, they were certified under B3. They were not certified under C4. We're talking about cases like Tyson's Food. You know, under their construction, C4 does no work. It's completely superfluous. And it should be interpreted to have meaning to do some work. And what it does is it does the work where we still have to satisfy for the certified issues all four of the 23A requirements. And we still have to satisfy 23B3, predominance and seniority, with respect to the issue certified. And we have to show that it's appropriate to give this class treatment. So there's about seven things that we have to show here. And that's what the court found. Where did the district court make findings on those seven things in its decision? And particularly with respect to commonality. Well, yes. You have to look at when we originally moved, we moved for B3 and asked for C4 in the alternative. The court had a decision where it walked through each of the 23A requirements and said that they were satisfied. And then it said superiority is satisfied. And then it said, but predominance is not satisfied as to the claim as a whole. And gave us a chance to come back and further brief the propriety of C4. That was a supplemental brief. And so then the court decided, yes, C4 is appropriate with respect to two issues, joint employer and general contractor. And so the court was incorporating. Where did the district court find predominance? With respect to the certified issues? Yeah. And it's supplemental class certification. Okay. The court discussed, this is in the, it's page 15 of the decision. It's 2391 of the joint appendix. Talking about the different schools of thought on C4. Sure, that's sort of its general background. It's not its analysis section. Its analysis section is where the rubber meets the road in this case. Yeah. Well, you know, on page 19, 2395 there, it says ultimately the question is the same. With maturely advanced litigation, that's not the same as predominance. Is it? I'm no class, you got, you all are all much more experienced in class actions than I am. But that doesn't sound like predominance to me. Yeah, there's more. I'm having trouble. Okay. If you find something later. Finding it. But I think, you know, the fact that the court discussed the need, you know, broadly to show predominance with respect to the issues. And then said, you've shown what you need to show in order for me to certify C4 class here.  It's implicit. It's implicit. And then, you know. The baseline. Sorry, finish your sentence. The court talked about, you know, is it appropriate and sort of used this formulation of, well, will it materially advance resolution of the case? That answers the appropriate question, not the predominance question. That's right. You know, the court also discussed superiority, which we also have to show, saying this is superior to the alternative of litigating it over and over again in potentially hundreds of cases. Did he appropriately flesh out the commonality? I didn't hear you answer that one. Well, commonality, it was in the original decision where he went through the 23A factors. And so he discussed commonality there. I thought you said the baseline changes when we get to C4. When he was doing that original analysis, the baseline was as to, and now you'll correct me, either the whole cause of action or the whole litigation, was it? Well, it would only be with respect to the D.C. law claims. So the causes of action was the baseline. Yes. So you tell me the baseline changes under C4. Otherwise, it wouldn't accomplish anything. You'd have the same problems, one with the other. So what is the baseline for 23A and B3 shifts under C4, I think, under your theory? I think only with regard to B3. I think with 23A, those are requirements, and they're frankly not that hard to show under this kind of case. And so the 23A requirements are going to be the same. And then when you get to B3, the requirements are still the same. You have to show predominance and superiority, but only as to the issue certified. When you ask about predominance, you can't be predominant in the abstract. You have to be predominant as to what? The issue certified. Well, how can you be predominant as to the issue certified? Because the whole rationale for the district court plucking the issue out or you all proposing the issue is, well, at least as to this one, it's all consistent. And so it seems to me it's going to be pretty much an empty analysis to say, okay, let's sever out this thing that everyone says is common evidence, and we march through the 23A factors again, and all those are met. And so joint employer is a predominant question as to joint employer? I just don't know how, again, like I was asking your friend on the other side for writing an opinion. I just don't even know how to articulate that. I think I'll get laughed at if I were to write something like that or we were to write something like that. Yes, we still have to show predominance, but certainly the more narrow the issue becomes, the easier it's going to be for us to show predominance. But we still have to show superiority, and we still have to show that it's appropriate. And if we talk about, well, if we keep stripping things down to the most basic question, you're always going to be able to show predominance. Well, that may be true, but if that question becomes, you know, too basic, we've drilled down to something very, very basic, then maintaining a class action is not going to be superior, and it's not going to be appropriate. What if, you know, joint employer is sort of a multi-factor test? So what if as to, and I forget, there isn't even consistency on what the precise number are, but let's just assume there's five factors for purposes of this question. Could you have a C4 class that says as to three of those five factors on joint employer, those commonality will be proven by single evidence, just like you have the same evidence. Can they carve it up one layer more than they've done here? No, and I don't think it really works with respect to the joint employer analysis, because even one factor can establish joint employer if it's overwhelming. Yeah, but you've got to look at all the factors. Yeah, joint employer, you can't really divide it up that way. It wouldn't make sense to do that, and it wouldn't be superior or appropriate to say, I'm only going to concentrate on, for example, who paid the drivers, which is one element of the joint employer analysis. It's not required, but it is something that's in addition. It wouldn't make any sense to do that, because you've drilled down to such a low level, and it's not really doing any work. And that's the thing to keep in mind. It's much more efficient to answer three of those questions all at once for everybody than to have them all litigated separately. I don't understand why that's any different than breaking out joint employer and the rest of it. You've already separated liability into joint employer, general contractor, and everything else, and so I don't understand why you can't subdivide. Well, I don't think it does it very much to subdivide factors that are not determinative. You know, it's the factors taken as a whole. So if we had a different legal question for which there are five tests to satisfy it, each one of which could be an independent basis for liability, then it would be okay to certify on three of them but not two of them? If the court thought it was superior and appropriate, then yes. But the district court would have to make those determinations. And think about how rare C-4 certifications are. I mean, we've had C-4 now for, what, 56 years? There's not that many C-4 cases out there because usually if you do drill down to such a tiny sliver of the case, yes, you might be able to show predominance, but it's not going to be superior. They're always going to be able to say it's much more efficient to just do this once than to litigate it 800 times. When it's going to be the same evidence, it's going to be the same up or down answer. So you're going to have predominance because we'll go, well, is it predominant as to this sub-question? Yes, it does. And I think it's going to be easy to find superiority because this poor district court struggling with this massive case is going to say this is much easier than doing it 800 times. And it's appropriate because when it's superior and predominant, in this case it just makes sense for efficiency and consistency in resolution. What's wrong with that analysis by a district court? I have to push back on the appropriate element because appropriate means it will materially advance the resolution of the case. And if it's too small a sub-part of a factor, it will not materially advance. Or when appropriate looks at the entire case, not the issue? Yes. Will it materially advance resolution of the case? And here it will. It wouldn't be faster to do it as a class than to do it 800 times over? Yes, and that's why C4 makes sense. No, but I mean under my hypothesis as well. It's going to go faster once than repeatedly. Yes. Okay, so then that would be an appropriate C4 class. Well, but again, we have to look at everything else that's going to have to be determined. I've already marched through how those are going to be analyzed. The 23A stuff is going to carry through. Predominance because we only ask those three questions. And superiority because it's much more efficient. It seems to me to be certainly efficient for resolution of those issues. Yes. And it's consistent for both parties, up or down, one way or the other. It could let someone out of the litigation altogether. And it's appropriate because anything I can clean up in this case quickly, consistently, and in one fell swoop will speed this litigation along. Okay. We probably didn't let you even make your own points. Do you guys have more questions? Any questions? I don't. Mr. Rogers? No. Okay. Did you want to touch briefly on FLSA? Sure. Yeah, I think I've covered our arguments under C4. On the FLSA issue, again, there's no reason to reach it here. We take a step back to pen and appellate jurisdiction. Because as I explained, everybody in the collective is in the class. And they're all going to come into the class if there's an opportunity to do that. And the same is going to be determined because the D.C. law, which is the class action, completely covers the felicit claims, gives better relief, and gives this alternative pathway to joint and several liability. So there's just no reason to get to the FLSA issue. But if we do, we think that Scott and Campbell are the best approach. And basically what they said is you can have similarly situated members of a collective where there's a common issue that, again, sort of materially advances the resolution of the case. It is true that typically those are policies and practices that are FLSA violating. But it doesn't have to be. And that's what we think the district court made the correct decision here, saying, yes, they're similarly situated because the joint employer question is going to be resolved the same way for all of them. And so we do think that, you know, if you reach that issue, we prevail. And Scott and Campbell is the best test. But there's really, as a practical matter, no need to reach it because this is all going to rise or fall on the C4 class action. My colleagues have no questions. Thank you very much. And Mr. Andre, we'll give you three minutes. Thank you, Judge Boyle. I wanted to push back on one thing that Mr. Patrick said about the potential binding effect of proceedings that the district court is contemplating here. And this is critical in our view. The district court, this is a case of Joint Appendix 2454. The district court has said he is not going to issue notice to the putative class members. So there are 800 that have been identified, at least by number, by the plaintiffs. But I don't know how they come into this case because they're not getting notice of being told to come in. The district court said that as a C4, that they're not going to be any issue of notice? Correct. And so that further, I guess, undermines not only the integrity of the district court's ruling, but it opens the door to all the problems that the carefully reticulated Rule 23 scheme is designed to address. That you have to give notice, that the judgment has to have some clarity, the appointment of counsel, and so on and so forth. And so the fact that there is not class notice going out to these 645 other drivers, and I guess we're going to get technical, the notice that the opt-ins got was just as to the weaker or less valuable FLSA claims. And so they didn't get technical notice that this other DC state law claim is pending. And so that doesn't protect their rights. And that's one of the concerns that animates whether classification or should be upheld. And it doesn't protect our rights because we basically have an advisor opinion, which goes back to why at the outset, I'm still struggling to figure out why this wasn't done under, you know, a partial summary judgment motion with just the name parties. I guess I also wanted to push back on the suggestion that under our hypothesis, C4 does no work. You know, the deep water horizon case, which both amici and plaintiffs assert is kind of the final nail in the coffin of Castano. If you read that case carefully, it doesn't mention Castano and it actually is doing precisely the work that I've been explaining that C4 was kind of designed at its core to do. It's doing what the advisory committee said back in 1966, it should do. Deep water horizon severed off damages. And then in doing so, the circuit said C4 is what allows us to do that. And so that's all we're asking for. And so again, our position is not going to render C4 a nullity. Where did the district court say it wouldn't do notice under the C4 class? Joint appendix page 2454. 2454. 2454. I guess with my last two seconds. Mr. Perpacher said that, you know, predominance is applied to the issue certified. We think as an actual matter that is contrary to the rule, B3 speaks in terms of the controversy, which, you know, I think has to certainly mean more than issues certified has to mean at minimum, a cause of action, kind of a full controversy within the broader controversy, but not something as small and as preliminary as whether my client is a joint employer or general contractor. They respond to judgment less earlier questions about why not partial summary judgment. And then whether or not you offered any such alternative options. I don't, I don't want to misspeak. I don't believe we did. I don't, I don't think we did, but I don't, I don't know for certain. Okay. Great. Thank you. Good Rogers or good child. Any further questions? No. All right. Thank you very much. Thank you for your time. The case is submitted.
judges: Millett, Childs, Rogers